IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| FARHAD DASTRANJ | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 15-2436 |
| MEHDI DEHGHAN, | * | |
| Defendant/Third Party Plaintiff, | * | |
| v. | * | |
| USA INVESTCO LLC et al., | * | |
| Third Party Defendants. | * | |

******

**MEMORANDUM OPINION**

Pending in this contractual dispute is Third Party Defendants' motion to dismiss (ECF No. 46). The issues are fully briefed and a hearing was held on Thursday, November 10, 2016, with supplemental briefing to follow. ECF Nos. 56, 57, & 58. For the reasons stated below, Third Party Defendants' motion is granted.

**I.    BACKGROUND[1]**

Plaintiff Farhad Dastranj ("Dastranj") is an Iranian citizen and resident seeking to immigrate to the United States. He attempted to obtain an Employment Based Fifth Preference Immigrant Investor Visa ("EB-5 Visa") under the Immigrant Investor Program (the "EB-5 Program"). ECF No. 1 at 2. To be eligible for an EB-5 Visa, an immigrant investor must invest, or be actively in the process of investing, at least $500,000 in an enterprise that will benefit the United States economy by creating full time employment for not fewer than ten (10) qualified

---

[1] Unless otherwise noted, the facts here are construed in the light most favorable to Dehghan as the nonmoving party.

individuals. *Id.* USA InvestCo ("InvestCo"), Northern Riverfront Marina and Hotel LLP ("Northern Riverfront"), and Wilmington Riverfront Development LLC ("Wilmington Riverfront") (collectively, "Third Party Defendants") are North Carolina-based companies that facilitate prospective EB-5 investors' visa requirements by allowing the investors to invest in the Third Party Defendants' qualifying projects ("EB-5 projects"). *See* ECF No. 36.

Defendant and Third Party Plaintiff, Mehdi Dehghan ("Dehghan") alleges that he is an employee of InvestCo, responsible for helping to acquire investor capital for Northern Riverfront and Wilmington Riverfront. *Id.* at 3–4. On or about August 8, 2010, Dehghan obtained a commitment from Dastranj to invest in Northern Riverfront so that Dastranj could satisfy his EB-5 Visa requirements. *Id.* at 4. Dehghan told Dastranj that Dastranj would be required to invest a minimum capital amount of $500,000.00 in securities, which Dehghan agreed to accept on InvestCo's behalf in the form of Iranian currency. *Id.* at 5–6. Dehghan promised that he would transfer the money to the appropriate individual company and in compliance with the EB-5 Program. In the meantime, Dastranj's investment capital would stay in Dehghan's bank account at the Bank of Pasargad in Iran. ECF No. 26 at 9. From November 2010 through December 2011, Dastranj gave Dehghan a total of $445,000.00 to invest in an EB-5 Project in North Carolina on behalf of Dastranj. Dehghan also received additional funds throughout 2012. ECF No. 1 at 3.

On or about October 2012, the U.S. Embassy denied Dastranj's visitor visa application. ECF No. 1 at 4. Dastranj alleges that while his visitor visa application was pending and after it was denied, Dehghan refused Dastranj's requests to transfer his investment capital to Dastranj's U.S.-based attorney so that the attorney could complete the visa process. *Id.* at 4–5. As a result of Dehghan's refusal to transfer the funds, Dastranj alleges that he demanded Dehghan return the

money to him. ECF No. 1 at 4–5. Dehghan admits that the funds have not been returned to Dastranj. ECF No. 10 at 5. However, he "is ready and willing to return [Dastranj's] funds in the form in which such funds were provided (i.e. Iranian currency)." *Id.*

On August 17, 2015, Dastranj filed a Complaint in this Court against Dehghan asserting six counts: (1) breach of contract; (2) unjust enrichment (in the alternative); (3) fraud; (4) "Consumer Protection Violation–N.C. Gen. Stat. § 75-1.1;" (5) "Fraudulent and Other Prohibited Practices–N.C. Gen. Stat. § 78A-8;" and (6) "Fraudulent Interstate Transactions–15 U.S.C. § 77q." ECF No. 1. All of Dastranj's claims center on Dehghan's alleged refusal to transfer Dastranj's investment capital to an EB-5 Project in North Carolina or to return the money back to Dastranj. *See generally id.*

On May 2, 2016, Dehghan filed a third party complaint against the Third Party Defendants for indemnification and contribution. ECF No. 36. The crux of Dehghan's claims is that he was an employee or agent acting on behalf of, and for the benefit of, the Third Party Defendants when he entered into his agreement with Dastranj. Because Dehghan was acting in his capacity as an employee or agent of the Third Party Defendants when he executed the agreement with Dastranj, the Third Party Defendants are liable for Dastranj's injury. On July 1, 2016, the Third Party Defendants filed a motion to dismiss Dehghan's Third Party Complaint under Rules 14 and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 46.

## II.  STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory

statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters,* 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### III.    ANALYSIS

#### A.    Choice of Law

This Court is presiding over a diversity action in Maryland, and thus applies Maryland choice of law rules. *See Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) ("A federal court sitting in diversity must apply the choice-of-law rules from the forum state."). For causes of action sounding in tort, Maryland adheres to the *lex loci delicti* rule, applying the substantive law of the state in which the alleged tort took place. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744–45 (2000). For causes of action sounding in contract, Maryland follows the doctrine of *lex loci contractus*, applying the substantive law of the place where the contract was formed. *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529 (1992). Finally, where a case involves causes of action sounding in tort and contract, Maryland embraces the concept of "dépeçage." That is, the court

will apply *lexi loci delicti* to the tort-based issues and *lex loci contractus* to those based in a contract. *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620 (2007).

Dehghan's Third Party Complaint alleges that the Third Party Defendants are liable to Dehghan under the theories of contribution and indemnification. ECF No. 36. Regarding indemnification, Dehghan neither alleges a contractual right to indemnity, nor does he argue for its existence in his opposition to the Third Party Defendants' motion to dismiss. Instead, Dehghan appears to assert a right of indemnity by implication, either of fact or by law. Deghgan's right to contribution, on the other hand, is a "statutory creation, resting on the principle that, when the parties stand *in aequali jure*, the law requires all to contribute equally to the discharge of the common liability." *S. Maryland Oil Co. v. Texas Co.*, 203 F. Supp. 449, 452 (D. Md. 1962); Md. Code Ann., Cts. & Jud. Proc. § 3-1402 (West). *Accord* N.C. Gen. Stat. Ann. § 1B-1 (West).

Third Party Defendants argue that North Carolina law applies to Dehghan's indemnification and contribution claims under the principle of *lex loci contractus* because any contracts or agreements between Deghgan and Third Party Defendants were executed in North Carolina. ECF No. 47 at 3–4. Dehghan argues that Iranian law governs because Dastranj's alleged injuries occurred in Iran. ECF No. 48 at 2. Dastranj resided in Iran during the relevant time period, and this is where he remains today. Further Dehghan deposited Dastranj's investment capital into an Iranian bank account where the funds sit undisturbed. Indeed, most if not all of Dehghan's conduct, Dastranj's injury, and the facts underlying Dastranj's common law causes of action (fraud, unjust enrichment, and breach of contract) appears to have taken place in Iran. Thus, following principles of *lex loci delicti* and *lex loci contractus*, he argues that Iranian law applies.

As a threshold matter, this Court cannot apply foreign law unless "the requirements of Rule 44.1 of the Federal Rules of Civil Procedure are met." *Baker v. Booz Allen Hamilton, Inc.*, 358 F. App'x. 476, 481 (4th Cir. 2009) (citing *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 216 (3d Cir. 2006), for proposition that, "where a party fails to carry its burden of proving foreign law under Rule 44.1, the forum law should apply," as well as *The Hoxie*, 297 F. 189, 190 (4th Cir. 1924), for its holding in a "pre-Rule 44.1 case, that forum law applies unless the party seeking to use foreign law establishes that foreign law differs from forum law").

Rule 44.1 states:

A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Rule 44.1 grants federal courts "broad authority to conduct their own independent research to determine foreign law but imposes no duty upon them to do so." *Baker*, 358 F. App'x. at 481 (citing *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 205 (1st Cir. 1988)); *accord Riffe v. Magushi*, 859 F. Supp. 220, 223 (S.D. W.Va. 1994). As a result, "the party claiming foreign law applies carries both the burden of raising the issue that foreign law may apply in an action and the burden of proving foreign law to enable the district court to apply it in a particular case." *Id.* "Where a party fails to satisfy either burden, the district court should apply the forum state's law." *Id.* (citing *Ferrostaal*, 447 F.3d at 216).

Here, Dehghan has failed to satisfy his burden under Rule 44.1. Dehghan first suggested Iranian law may be applicable in his reply in support of his motion for leave to file a third party complaint. ECF No. 32. After admitting that "Defense Counsel has not yet been able to investigate Iranian law," he supplied the Court with a case from the Fourth Circuit Court of

Appeals, *Basch v. Westinghouse Elec. Corp.*, 777 F.2d 165 (4th Cir. 1985), which found that Iranian law recognizes vicarious liability in some circumstances. *See* ECF No. 32 at 14. Reference to a single United States Court of Appeals case applying Iranian law is not enough for Dehghan to sustain his burden under Rule 44.1. In *Basch*, by comparison, the defendant moved under Rule 44.1 shortly after the complaint was filed, submitted substantive memoranda concerning Iranian law, and retained Iranian law experts who analyzed the issues pending before the court. *Basch*, 777 F.2d at 169.

Dehghan, however, did not pursue any similar avenues of proof to satisfy Rule 44.1. Rather, he argues the merits of his Third Party Complaint by exclusive reference to *Maryland law*. *See* ECF No. 48 at 6–9. *See Ferrostaal*, 447 F.3d at 218 (declining to apply Tunisian law because the moving party who sought to rely on Tunisian law "did not provide expert testimony, the text of the actual enactment, Tunisian court decisions, excerpts from treatises, or any other authoritative sources."); *accord* Fed. R. Civ. P. 44.1 advisory committee's note, 1966 Adoption (when litigant invokes foreign law, court may "insist on a complete presentation by counsel" and that Rule "refrains from imposing an obligation on the court to take 'judicial notice' of foreign law because this would put an extreme burden on the court in many cases"). Because Dehghan failed to carry his burden under Rule 44.1, the Court will decline Dehghan's invitation to apply Iranian law. *Baker*, 358 F. App'x. at 481. And normally where a party fails to carry its burden of proving foreign law under Rule 44.1, the law of the forum state applies which in this case is Maryland. *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 216 (3d Cir. 2006).

This conclusion does not end the analysis, however, because the Third Party Defendants argue that North Carolina law applies to Dehghan's claims. But the Court need only confront choice-of-law question where the laws of the different states lead to different outcomes. *See*

*Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 749 (D. Md. 2003). Here, Maryland and North Carolina law do not conflict on indemnification and contribution, and so the law of the forum—Maryland—governs this motion.

**B.     Indemnification**

**i.      Indemnity Implied by Law**

In his response in opposition to the Third Party Defendant's motion to dismiss, Dehghan relies most heavily upon the "tort-based theory of indemnification," also called indemnity implied in law. ECF No. 48 at 8–9. Under Maryland law, a person may have a right to indemnity through a contract implied in law when that person, "'without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another.'" *Pulte Home Corp. v. Parex, Inc.*, 403 Md. 367, 382 (2008) (quoting Restatement of Restitution § 96). *Accord Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 41, 587 S.E.2d 470, 475 (2003). Maryland courts have made clear that joint tortfeasors that are *in pari delcito* may have no right to indemnification. *Hartford Acc. & Indem. Co. v. Scarlett Harbor Associates Ltd. P'ship*, 109 Md. App. 217, 277 (1996) (citing *Baltimore & O. R. Co. v. Cty. Comm'rs of Howard Cnty.*, 113 Md. 404 (1910)). Thus, the right to indemnification may only lie when there is a considerable difference in the degree of fault among the wrong doers.

In *Hartford*, the Maryland Court of Special Appeals explained that this brand of "indemnity is available where the party seeking indemnity is only 'secondarily' liable, as compared to the other tortfeasor's 'primary' liability." 109 Md. App. at 277 (citing *Pyramid Condominium Association v. Morgan*, 606 F. Supp. 592, 596–97 (D. Md. 1985)). "[A] party may be entitled to indemnity where he was only technically or constructively at fault, as from a failure to perform some legal duty, and the negligent or wrongful act of the party from whom

8

indemnity is sought was the primary or proximate cause of the injury." *Id.* (citation and internal quotation marks omitted). Simply put, "a defendant may seek indemnification only when its liability is passive or secondary, which liability is rooted in the concept of constructive fault." *Pyramid Condo. Ass'n v. Morgan*, 606 F. Supp. 592, 596 (D. Md. 1985).

Whether a tortfeasor's wrongful conduct is active or passive must be determined from the four corners of the original plaintiff's complaint against the defendant who seeks to implead the third party. *Id.* If the plaintiff's complaint alleges active wrongdoing by the defendant/third-party plaintiff, or if it is clear from the facts alleged in the complaint that the defendant's (third-party plaintiff) liability would only arise from proof of active wrongdoing, then the defendant/third party plaintiff cannot seek indemnity and dismissal of the indemnity claim in the third party complaint is appropriate. *Id.*

Here, the Dastranj Complaint does not reveal any basis for an indemnity claim against the Third Party Defendants. All of Dastranj's claims, including his claim for fraud, are asserted against Dehghan individually. Dastranj never alleges that Dehghan was acting on behalf of, or in concert with, the Third Party Defendants. In fact, the Dastranj Complaint is silent as to the Third Party Defendants. As pleaded, a trier of fact could only conclude that Dehghan was the primary, if not sole, tortfeasor. Accordingly, Dehghan's claim for indemnification is dismissed to the extent it relies on a right implied by law.

## ii.     Indemnity Implied-in-Fact

Dehghan's Third Party Complaint also suggests a right of indemnity implied in fact against the Third Party Defendants. A right of indemnity implied in fact stems from the existence of a binding contract between two parties that necessarily implies the right. *See Pulte Home Corp.*, 403 Md. at 382. A right of indemnity implied in fact may arise from a special relationship

between the parties, usually contractual in nature, or from a course of conduct. But not every contractual relationship will produce an implied indemnity. Rather, "a contractual right to indemnification will only be implied when there are unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility . . . or when there is a generally recognized special relationship between the parties." *Pulte Home Corp. v. Parex, Inc.*, 403 Md. 367, 382 (2008) (quoting *Araujo v. Woods Hole, Martha's Vineyard, Etc.*, 693 F.2d 1, 2–3 (1st Cir. 1982)). "In the contracts context, equity is more hesitant to imply an indemnity right, because if the parties desired to create an indemnitor-indemnitee relationship, they could have done so in the contract." *DiMarco Constructors, LLC v. Staunton Plaza, LLC*, No. 5:09CV00001, 2009 WL 2058686, at *3 (W.D. Va. July 14, 2009) (quoting *Hanover Ins. Co. v. Corrpro Cos., Inc.*, 312 F.Supp.2d 816, 821 (E.D. Va. 2004)) (internal quotation marks omitted).

Dehghan's indemnity implied-in-fact claim rests completely on the allegation that as an employee or agent of the Third Party Defendants, he was acting "on behalf and for the benefit" of the Third Party Defendants when he entered into the Subscription Agreement with Dastranj. ECF No. 36 at 7–8. Merely alleging an employment or agency relationship, however, is insufficient to hold the Third Party Defendants responsible for implied-in-fact indemnity.

"[A] principal is ordinarily not obliged to indemnify an agent for the agent's own tortious conduct." *Gaines v. Walker*, 986 F.2d 1438, 1442 (D.C. Cir. 1993); *see generally* Restatement (Second) of Agency § 440(a) (no duty to indemnify agent "for pecuniary loss or other harm, not of benefit to the principal, arising from the performance of unauthorized acts or resulting solely from the agent's negligence or other fault"). *See also Rodrigues v. United Pub. Workers, AFSCME Local 646, AFL-CIO*, No. 30286, 2014 WL 983024, at *10 (Haw. Ct. App. Mar. 13,

2014), *cert. granted,* No. SCWC-30286, 2014 WL 2573075 (Haw. June 9, 2014), *and aff'd*, 135 Haw. 316, 349 P.3d 1171 (2015) ("[A]n agent's claim for indemnification against his principal will not lie where that claim is premised solely on a theory of the principal's vicarious liability for the harmful acts of its agent."); Restatement (Third) of Agency § 8.14 cmt. B (2005) ("A principal's duty to indemnify does not extend to losses that result from the agent's own negligence."). To hold otherwise would allow a culpable agent to shift the loss to the principal which neither authorized nor benefitted from the tortious acts of the agent. *Cf. Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 304 (1959) (explaining an agent, just because she is an agent, does not cease to be answerable for her acts). Put differently, "indemnity has been granted to prevent unjust enrichment" to the principal. *Howard University v. Watkins*, 857 F. Supp. 2d 67, 72 (D.D.C. 2012) (quoting *District of Columbia v. Washington Hosp. Ctr.*, 722 A.2d 332, 340 (D.C. 1998) (citing Restatement (Second) of Torts § 886)). Conversely, common law indemnification is available where the principal is the actual wrongdoer and the agent is held responsible solely because of his relationship to the principal. *MacCarthy v. Turner Constr., Inc.*, 17 N.Y.3d 369 (2011).

  Here, Deghan's Third Party Complaint fails as a matter of law regarding indemnification implied in fact. Dehghan has pleaded no more than he was acting on behalf of the Third Party Defendants when he executed the agreement with Dastranj and accepted Dastranj's investment capital on InvestCo's behalf. *See* ECF No. 36. But as to the alleged tortious conduct itself—keeping the funds—nowhere does Deghan plead that Third Party Defendants *authorized* or *benefitted* from that wrongful act. Indeed, Deghan nowhere alleges that the Third Party Defendants played any role in Deghan keeping the money. Accordingly, on the facts as pleaded, Third Party Defendants were not the actual wrongdoers, and so indemnity here would not stave

off their unjust enrichment. Deghan's common law indemnity claim, therefore, must be dismissed.

**C.     Contribution**

Lastly, Dehghan alleges that he is "entitled to contribution from the Third Party Defendants as to any and all sums for which the Court finds the Defendant liable to Plaintiff in the instant action, plus costs, interest and reasonable attorney's fees." ECF No. 36 at 9. Dehghan alleges that he is entitled to contribution because, at all relevant times, he was acting on behalf of the Third Party Defendants. *Id.* The Third Party Defendants argue that Dehghan's contribution claim is barred because the Third Party Defendants already entered into a settlement agreement with Plaintiff Dastranj and Dehghan otherwise fails to state a claim for contribution.

Maryland recognizes a right to contribution among "joint tort-feasors." Md. Code Ann., Cts. & Jud. Proc. § 3-1402 (West). The term "joint tort-feasor" is defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Md. Code Ann., Cts. & Jud. Proc. § 3–1401(c). Thus, to sustain his contribution claim, Dehghan must plead facts sufficient to support an allegation that Dehghan and the Third Party Defendants are joint tortfeasors—that the Third Party Defendants could have been sued directly by the Dastranj. *See NVR, Inc. v. Harry A. Poole, Sr. Contractor, Inc.*, No. ELH-14-241, 2015 WL 1137739, at *10 (D. Md. Mar. 13, 2015). Dehghan has failed to do so. There are no allegations in the Dastranj Complaint that the Third Party Defendants played any role in Dehghan's alleged fraudulent behavior. And as noted above, Dehghan does not allege that Third Party Defendants instructed, authorized, or ratified the only conduct at issue—Dehghan's failure to return the funds. Therefore, Dehghan's claim for contribution must also be dismissed.

## IV.     CONCLUSION

Six months after Plaintiff Destranj had filed his initial suit, Deghan moved for leave to file a third party complaint seeking indemnification and contribution. Deghan was granted this leave even though the Court's December 16, 2015 deadline for moving for joinder of additional parties had long passed. ECF Nos. 26, 35. By then, substantial discovery in the original action had been completed. With the discovery at his disposal at the time he filed the Third Party Complaint, Deghan nonetheless failed to marshal facts sufficient to sustain his third-party claims as pleaded. The discovery deadline in this case was set for April 6, 2016, and the initial action merits expeditious resolution without further delay. Accordingly, Dehghan's Third Party Complaint is dismissed with prejudice. A separate order will follow.


12/1/2016                                                         /S/
Date                                                              Paula Xinis
                                                                  United States District Judge